[Cite as *R & J Solutions, Inc. v. Moses*, 2021-Ohio-1315.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| R & J Solutions, Inc., | : | |
| Plaintiff-Appellant, | : | No. 19AP-703 |
| | | (C.P.C. No. 17CV-2522) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ambrose Moses, III, Esq., | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 15, 2021

**On brief:** *Ric Daniell*, for appellant. **Argued:** *Ric Daniell.*

**On brief:** *Ambrose Moses, III*, pro se. **Argued:** *Ambrose Moses, III.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Plaintiff-appellant, R & J Solutions, Inc., appeals the September 16, 2019 decision and entry of the Franklin County Court of Common Pleas granting judgment following a bench trial in favor of defendant-appellee, Ambrose Moses, III, Esq., on appellant's claim for legal malpractice. For the following reasons, we reverse.

**I. Facts and Procedural History**

{¶ 2} On March 13, 2017, appellant filed a complaint in the trial court asserting a claim of legal malpractice against appellee. In its complaint, appellant, an Ohio corporation, alleged appellee represented it in a prior lawsuit filed by Premier Trailer Leasing, Inc. ("Premier"), which sought to collect funds from appellant. Appellant alleged Premier filed a discovery request on August 23, 2016, but appellee never disclosed the discovery request

to appellant or otherwise responded to the same. Appellant alleged that Premier filed a motion for summary judgment on October 18, 2016, and appellee never informed appellant of such motion. Instead of responding with evidence or affidavits to Premier's motion for summary judgment, appellee filed a response containing arguments based on Texas law. Appellant alleged that due to appellee's negligence, summary judgment was granted to Premier in the amount of $40,279.37 plus costs.

{¶ 3} On April 16, 2017, appellee filed an answer admitting he provided legal advice, counsel, and representation to appellant, but denying the other allegations giving rise to appellant's claim. On December 7, 2017, appellant filed a motion for leave to file an untimely summary judgment motion on the issue of liability. On December 26, 2017, appellee filed a memorandum in opposition to appellant's December 7, 2017 motion for leave. On May 10, 2018, the trial court granted appellant's December 7, 2017 motion for leave to file an untimely summary judgment motion on the issue of liability, giving appellant seven days to file such motion.[1]

{¶ 4} On August 12, 2019, the matter proceeded to bench trial. At trial, appellant called appellee, who was proceeding pro se, as a witness as if on cross-examination. Appellee testified he spoke with Renatha Mitchell, the CEO of appellant, about an ongoing collection matter between appellant and Premier. Appellee agreed to communicate on appellant's behalf with the collections agency that had been engaged on behalf of Premier. Appellee testified appellant wanted time to determine how much was actually owed and, thereafter, to make payment on such amount. Appellee received documents from appellant indicating that the amount owed by appellant to Premier was $1,186.

{¶ 5} Appellee testified that Premier filed a complaint against appellant on January 15, 2016 and he filed an answer on behalf of appellant on February 18, 2016. Premier filed a motion for summary judgment against appellant on October 18, 2016, in which it asserted appellant had been served on August 23, 2016 with discovery requests, including requests for production of documents, requests for admissions and interrogatories, but appellant had not responded to such requests by the deadline of September 20, 2016. Appellee agreed that appellant had been served with such discovery

---

[1] We note the record does not reflect that appellant filed a motion for summary judgment following the court's May 10, 2018 decision.

requests and that he did not provide any response. Appellee stated he received documents from appellant that he could have used in responding to the discovery request to demonstrate that appellant "did not owe the amount claimed by [Premier]." (Tr. at 39.) When asked why he did not respond to the discovery requests, appellee stated "[q]uite honestly, I'm not recalling the full reason for that. I just had a lot of other things that were going on and I believe it just got caught up in the -- sort of the work of the office, just sort of overlooked." (Tr. at 43.) Appellee stated it was not appellant's fault that he did not respond to the discovery request. When asked "[i]f there's no response to a request for admissions, then under the Civil Rules, can't this request be deemed admitted," appellee responded "[g]enerally, that's the case, yes." (Tr. at 18-19.)

{¶ 6} Appellee testified he filed a response to Premier's motion for summary judgment on December 12, 2016, in which he argued that Premier was not following the terms of their contract or Texas law, pursuant to a choice of law provision in the contract. Appellee admitted this strategy was not successful in terms of the determination on the merits in that action. However, he testified that his purpose in the representation was "to buy time" for appellant "to take appropriate legal means, have time for them to work out a resolution and to raise funds to pay" the amount due to Premier. (Tr. at 12.) Appellee testified that the trial court in the underlying case granted summary judgment to Premier on December 16, 2016, finding there was no dispute as to any material fact of record in the case. Appellee testified it was his understanding appellant eventually paid $15,000 to settle the underlying case following summary judgment.

{¶ 7} Renatha Mitchell testified she was the secretary, treasurer, and CEO of appellant. Mitchell testified she asked appellee to represent appellant upon receiving a collection notice from Premier. Mitchell met with appellee before Premier filed its case against appellant. At the meeting, appellee reviewed appellant's documentation related to Premier. Later, Mitchell e-mailed any and all documents she possessed regarding the collections matter to appellee.

{¶ 8} After Premier filed its complaint against appellant, Mitchell testified she called and sent text messages to appellee on a number of occasions. Appellee did not inform Mitchell that a motion for summary judgment had been filed by Premier. Mitchell testified she sent appellee a text on December 13, 2016, in which she urgently asked him to contact

her. Mitchell thereafter sent appellee a text informing him she had noticed his filing a memo in opposition to Premier's motion for summary judgment. On January 3, 2017, after the trial court in the underlying case had granted summary judgment in favor of Premier, Mitchell sent another text message to appellee stating she had called and left messages for him. Mitchell received no response to any of these messages. Appellee never informed Mitchell that the trial court had granted judgment in favor of Premier. Mitchell was unaware that judgment had been rendered against appellant until after receiving a certified copy of the judgment.

{¶ 9} Mitchell testified that based on 63 hours of research conducted by employees of appellant, the amount due to Premier was $1,886.00. The trial court's decision granting summary judgment in favor of Premier found that appellant was liable for a total of $40,279.37 plus interest and costs. After the trial court granted summary judgment in favor of Premier in the underlying matter, Mitchell filed a motion under Civ.R. 60(B) seeking relief from the judgment, which was denied. Mitchell then settled the underlying matter with Premier for $15,000.00.

{¶ 10} On September 16, 2019, the trial court filed a decision and entry following the bench trial finding appellant failed to prove its claim for legal malpractice because expert testimony was required to establish the standard of care. Additionally, the trial court found appellant failed to establish causation.

## II. Assignments of Error

{¶ 11} Appellant appeals and assigns the following two assignments of error for our review:

> [I.] The lower court erred in finding that R & J Solutions needed an expert witness to show that Appellee failed to conform to the applicable standard of care.
>
> [II.] The lower court erred in finding that there was no ca[us]al connection between the conduct by Appellee complained of and the resulting damages.

## III. Analysis

{¶ 12} In its two assignments of error, appellant argues the trial court erred in finding that it did not establish the elements of its legal malpractice claim against appellee.

## A. Applicable Law

{¶ 13} "To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 77 Ohio St.3d 421 (1997), syllabus. The first element, that an attorney owed a duty to the plaintiff, is "typically established through the existence of some form of attorney-client relationship." *McBroom v. Gertmenian*, 10th Dist. No. 18AP-204, 2018-Ohio-3884, ¶ 18, citing *Illinois Natl. Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.*, 10th Dist. No. 10AP-290, 2010-Ohio-5872, ¶ 19, citing *Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 10. *See Svaldi v. Holmes*, 10th Dist. No. 12AP-167, 2012-Ohio-6161, ¶ 18, quoting *Advanced Analytics Laboratories, Inc. v. Kegler, Brown, Hill & Ritter, L.P.A.*, 148 Ohio App.3d 440, 2002-ohio-3328, ¶ 34 (10th Dist.) (" 'An attorney's duty to his or her client exists in relation to the scope of representation sought by the client and undertaken by the attorney.' "). The trial court found the first element met because appellee represented appellant in the underlying action. The parties do not dispute this finding on appeal. Therefore, we consider whether appellant established the remaining elements.

**B. First Assignment of Error - Breach of Duty**

{¶ 14} In its first assignment of error, appellant argues the trial court erred in finding it did not meet the second element of its legal malpractice claim. Specifically, appellant argues the trial court erred in finding expert testimony was required to determine whether appellee failed to conform to the applicable standard of care.

{¶ 15} With regard to the second element of a legal malpractice claim, a plaintiff cannot merely demonstrate " 'imperfect representation,' " but rather " 'must establish a failure to conform to the applicable standard of care.' " *Tarazi v. Siddiqi*, 10th Dist. No. 19AP-557, 2020-Ohio-3432, ¶ 11, quoting *Seoane-Vazquez v. Rosenberg*, 10th Dist. No. 19AP-16, 2019-Ohio-4997, ¶ 23. "The duty of an attorney to his client is to * * * exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to be ordinarily and reasonably diligent, careful, and prudent in discharging the duties he has assumed." (Internal quotations omitted.) *Phillips*

*v. Wilkinson*, 10th Dist. No. 17AP-231, 2017-Ohio-8505, ¶ 14, quoting *Yates v. Brown*, 185 Ohio App.3d 742, 2010-Ohio-35, ¶ 17 (9th Dist.), quoting *Palmer v. Westmeyer*, 48 Ohio App.3d 296, 298 (6th Dist.1988), quoting 67 Ohio Jurisprudence 3d, Malpractice, Section 9, at 16 (1986). "This 'standard of care' has been described as that which 'a reasonable attorney, similarly situated, would have [done] under the circumstances.' " *Goldberg v. Mittman*, 10th Dist. No. 07AP-304, 2007-Ohio-6599, ¶ 11, quoting *Brunstetter v. Keating*, 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, ¶ 18.

{¶ 16} In *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112 (1984), the Supreme Court of Ohio held that, in a legal malpractice case, expert testimony is generally required in order to prove breach of the duty that the attorney owed to the plaintiff, unless the claimed breach of professional duty is "well within the common understanding of * * * laymen." *Id.* at 113. *See Whiteside v. Conroy*, 10th Dist. No. 05AP-123, 2005-Ohio-5098, ¶ 50. " 'Expert testimony is required so that the trier of fact does not have to speculate on the standard of care, particularly in a complex case involving [matters] which are normally not within the realm of understanding of the layman.' " *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 17, quoting *Northwestern Life Ins. Co. v. Rogers*, 61 Ohio App.3d 506, 512 (10th Dist.1989). *See Goldberg* at ¶ 13 (listing cases in which this court has held expert testimony is required to demonstrate breach of duty). However, no expert testimony is required where "the alleged breach of care is so obvious that it can be determined from the ordinary knowledge and experience of laymen." *Roberts v. Hutton*, 152 Ohio App.3d 412, 2003-Ohio-1650, ¶ 55 (10th Dist.). We have also stated that expert testimony is not required in cases in which the breach is "so obvious that it may be determined by the court as a matter of law." (Internal quotations omitted.) *Brust v. Kravitz*, 10th Dist. No. 16AP-201, 2016-Ohio-7871, ¶ 41, quoting *Bloom v. Dieckmann*, 11 Ohio App.3d 202, 203 (1st Dist.1983), quoting Annotation, 14 A.L.R.4th 170, 173 (1982). *See Kent's Excavating Servs. v. Leneghan*, 8th Dist. No. 104820, 2017-Ohio-1371, ¶ 17 (where the claimed errors are " 'so simple and obvious,' expert testimony is not required to demonstrate the breach of the attorney's standard of care").

{¶ 17} Here, the trial court found expert testimony was required to determine whether appellee failed to conform to the applicable standard of care because it was "unable to conclude that [appellee's] failure to respond to requests for admissions and the written

response to the motion for summary judgment is such that a layperson could determine if a breach occurred absent expert testimony." (Decision at 4.)  The court noted appellee's testimony that "not responding to the request for admissions and the argument raised in the memo contra to the summary judgment motion fell within the strategy to provide [appellant] time to pay off any amount owed." (Decision at 4.)  Thus, the trial court found the legal issues presented in the case were not within the ordinary knowledge of a layperson and not so obvious as may be determined as a matter of law.

{¶ 18}  We disagree with the trial court, at least with regard to missing the discovery deadline.  A layperson may not be able to determine, without expert assistance, if the strategy in making certain arguments in response to a summary judgment motion conforms to a lawyer's standard of care.  However, a layperson could determine, without expert assistance, if missing a deadline because it was overlooked and not the client's fault conforms to a lawyer's standard of care.

{¶ 19}  Courts in several cases have found that expert testimony is not required to establish breach of duty in a legal malpractice claim. In one such case, an Ohio appellate court found that an attorney's alleged negligence was so clear to constitute negligence as a matter of law such that expert testimony was not necessary as to standard of care and breach where the attorney "fail[ed] to keep himself apprised of the status of the case and miss[ed] a decision dismissing the case within the time to appeal." *Harris v. Rossi*, 11th Dist. No. 2017-T-0045, 2018-Ohio-4573, ¶ 53. *See Estate of Hards v. Walton*, 8th Dist. No. 93185, 2010-Ohio-3596, ¶ 12-13 (finding expert testimony not required where attorney did not assert that failure to file response to motion for judgment on the pleadings constituted an exercise of professional judgment, but instead conceded that filing deadline was missed because he was distracted by a family emergency). We have previously noted that "expert testimony may not be necessary to support a legal malpractice claim where the attorney fails to file a viable claim before the statute of limitations expires." *Brust* at ¶ 41, citing *DePugh v. Sladoje*, 111 Ohio App.3d 675, 681-82 (2d Dist.1996).  We have also stated that " '[t]he failure to abide by a client's specific instructions may be sufficient to establish a breach of a professional duty without expert testimony.' " *Id.*, quoting *Dimacchia v. Burke*, 904 F.2d 36 (6th Cir.1990), citing *McInnis* at 113.

{¶ 20} In this case, Premier received summary judgment in the underlying case following appellee's failure to respond to their requests for admissions. We have previously stated that " '[p]ursuant to the express language of Civ.R. 36(A), requests for admissions are "self-executing; if there is no response to a request or an admission, the matter is admitted. Unlike other discovery matters, the admission is made automatically and requires no further action by the party requesting the admission." * * * Thus, once a party fails to timely respond to the requests for admissions, the defaulted admissions become facts.' " *Goldberg* at ¶ 24, quoting *Palmer-Donavin v. Hanna*, 10th Dist. No. 06AP-699, 2007-Ohio-2242, ¶ 10, quoting *Bronski v. Rite Aid Corp.*, 4th Dist. No. 88 CA 21 (Feb. 16, 1989). The record reflects that because there was no response to Premier's request for admissions regarding the amounts allegedly owed by appellant, the admissions were made automatically and became facts. As a result, the trial court in the underlying matter found there was no dispute as to a genuine issue of material fact and granted summary judgment.

{¶ 21} In his testimony before the trial court, appellee admitted he failed to respond to Premier's discovery requests, including their written request for admissions pursuant to Civ.R. 36. When asked "[i]f there's no response to a request for admissions, then under the Civil Rules, can't this request be deemed admitted," appellee responded "[g]enerally, that's the case, yes." (Tr. at 18-19.) Furthermore, appellee acknowledged the documents provided by appellant could have been used to demonstrate that it "did not owe the amount claimed by [Premier]." (Tr. at 39.) Appellee acknowledged he "overlooked" providing a response to Premier's discovery request. (Tr. at 43.) The Rules of Professional Conduct state that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." (Emphasis omitted.) Prof.Cond.Rule 1.3. A comment to this rule explains that "[d]elay and neglect are inconsistent with a lawyer's duty of diligence, undermine public confidence, and may prejudice a client's cause. Reasonable diligence and promptness are expected of a lawyer in handling all client matters and will be evaluated in light of all relevant circumstances." Prof.Cond.R. 1.3, comment 3. Consistent with this rule, it has been held that " 'attorneys are expected to keep themselves advised of the progress of their cases.' " *Yoder v. Thorpe*, 10th Dist. No. 07AP-225, 2007-Ohio-5866, ¶ 13, quoting *Metcalf v. Ohio State Univ. Hosps.*, 2 Ohio App.3d 166, 168 (10th Dist.1981).

{¶ 22} Therefore, on the facts of this case, based on appellee's testimony and the undisputed record regarding appellee's failure to respond to Premier's request for admissions, expert testimony was not required to establish the standard of care and breach as to missing the discovery deadline. *Harris* at ¶ 53; *Hards* at ¶ 12-13. Accordingly, we sustain appellant's first assignment of error.

## C. Second Assignment of Error - Causation

{¶ 23} In its second assignment of error, appellant asserts the trial court erred in concluding there was no causal connection between the conduct of appellee and the resulting damages in the underlying litigation. The trial court found it was unable to "conclude that [appellee's] negligence, if any, is the reason judgment in the amount of $40,279.37 was granted against [appellant] in the Premier action." (Decision at 5.) The court found that "[w]hile [appellant] argued that the total amount due was $1,186.00, this Court will note that Premier provided evidence in the underlying litigation to suggest that the amount owed was substantially higher than $1,186.00." (Decision at 5.) Furthermore, the court noted that appellant "was able to settle the matter post-judgment for an amount less than the awarded judgment but still greater than $1,186.00." (Decision at 5.)

{¶ 24} The Supreme Court has provided different standards for determining causation in legal malpractice cases. First, in *Vahila*, the court set forth the "some evidence" standard, which requires a plaintiff to demonstrate "some evidence of the merits of the underlying claim" to establish the causation element. *Id.* at 428. Next, in *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, ¶ 16, the court set forth the "but for" test for causation in applying the "case-within-a-case doctrine."

{¶ 25} In *Vahila*, the claimed malpractice consisted of the defendant attorneys' "failure * * * to properly disclose all matters and/or legal consequences surrounding the various plea bargains entered into by Terry Vahila and the settlement arrangements agreed to by [plaintiffs] with respect to the several civil matters." *Id.* at 427. The plaintiffs alleged losses of $100,000 and lost profits of at least $200,000. *Id.* at 422. The court found that on "the facts of [the] case, [plaintiffs] have arguably sustained damage or loss regardless of the fact that they may be unable to prove that they would have been successful in the underlying matter(s)." *Id.* at 427.

{¶ 26} The court noted that "the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case." *Id.* at 427-28. Although the court recognized that "a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim," the court declined to "endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter." *Id.* at 428.

{¶ 27} In *Environmental Network*, the plaintiffs filed a legal malpractice suit claiming that the defendant attorney's "malpractice resulted in a coerced settlement and that appellees would have achieved a better result if the underlying case had been tried to its conclusion." *Id.* at ¶ 9. Following trial, the jury found in favor of the plaintiffs and awarded them damages. The trial court denied the defendant's motion for judgment notwithstanding the verdict or, in the alternative, a new trial, on grounds that plaintiffs had satisfied their burden under *Vahila* of establishing proximate causation by producing "some evidence" on the merits of their claims in the underlying action.

{¶ 28} On appeal, the Supreme Court noted that in *Vahila* it had "rejected a wholesale adoption of a 'but for' test for proving causation and the mandatory application of the "case-within-a-case doctrine." *Environmental Network* at ¶ 16. Under the case-within-a-case doctrine:

> "All the issues that would have been litigated in the previous action are litigated between the plaintiff and the plaintiffs former lawyer, with the latter taking the place and bearing the burdens that properly would have fallen on the defendant in the original action. Similarly, the plaintiff bears the burden the plaintiff would have borne in the original trial; in considering whether the plaintiff has carried that burden, however, the trier of fact may consider whether the defendant lawyer's misconduct has made it more difficult for the plaintiff to prove what would have been the result in the original trial."

*Id.* at ¶ 16, quoting Restatement of the Law 3d, Law Governing Lawyers, Section 53, at 390, Comment b (2000).

{¶ 29} Unlike the plaintiffs in *Vahila*, who sustained losses regardless of the merits of the underlying case, the plaintiffs in *Environmental Network* "could recover only if they could prove that they would have succeeded in the underlying case and that the judgment

would have been better than the terms of the settlement." *Id.* at ¶ 18. Thus, the court found that the theory of the case "place[d] the merits of the underlying litigation directly at issue because it stands to reason that in order to prove causation and damages, [the plaintiffs] must establish that [the defendant's] actions resulted in settling the case for less than [the plaintiffs] would have received had the matter gone to trial." *Id.* Accordingly, the court found that where the plaintiffs' "sole theory for recovery is that if the underlying matter had been tried to conclusion, they would have received a more favorable outcome than they obtained in the settlement," the case-within-a-case doctrine applied. *Id.*[2]

{¶ 30} Under the facts and circumstances present in this matter, we find the test in *Vahila* to be the appropriate test. Unlike in *Environmental Network*, the underlying case in this matter was determined on the merits when the trial court granted summary judgment in favor of Premier. Furthermore, appellant's theory of the case did not rely on demonstrating that it would have succeeded in the underlying case. Instead, appellant's theory of the case, like in *Vahila*, was that due to appellee's alleged failures to respond to the discovery requests, including the request for admissions, appellee failed to secure viable defenses for appellant and, as a result, appellant sustained damages regardless of the fact that it may be unable to prove it would have been successful in the underlying matter. Thus, in order to establish causation, appellant was required, pursuant to *Vahila*, to " 'provide some evidence of the merits of the underlying claim.' " *Goldberg* at ¶ 23, quoting *Frump v. Conley*, 10th Dist. No. 99AP-561 (Feb. 17, 2000). In order to meet this standard, appellant was required to "demonstrat[e] that the claims or defenses that the attorney allegedly negligently failed to assert were 'at least colorable.' " *Id.*, quoting *Williams-Roseman v. Owen*, 10th Dist. No. 99AP-871 (Sept. 21, 2000).

{¶ 31} Although the trial court found appellant failed to establish causation, the trial court did not identify the test it applied in reaching this conclusion. Nor are we able to determine from the text of the trial court's analysis the standard against which appellant's claim was measured. Therefore, because the trial court's decision lacks sufficient clarity to

---

[2] We note that "Ohio courts have held that expert testimony is not required to establish proximate cause in a legal malpractice action." *McGraw v. Jarvis*, 10th Dist. No. 19AP-538, 2021-Ohio-522, ¶ 36, citing *Morris v. Morris*, 9th Dist. No. 21350, 2003-Ohio-3510, ¶ 21. Similarly, "while a plaintiff claiming legal malpractice must put forth evidence of damages, there is no requirement in Ohio law that those damages be supported by expert testimony." *McGraw* at ¶ 36.

enable meaningful appellate review, we must remand this matter for the trial court to apply *Vahila* in the first instance to determine whether appellant met the "some evidence" standard of causation. *See Yurkowski v. Univ. of Cincinnati*, 10th Dist. No. 13AP-1049, 2015-Ohio-1511, ¶ 17 (finding that where the "trial court applied the incorrect standard of care in evaluating the testimony, it was necessary for the trial court on remand to independently weigh the expert testimony and resolve the conflicting opinions in applying the correct standard"); *State v. J.L.S.*, 10th Dist. No. 18AP-125, 2019-Ohio-4173, ¶ 80 (finding it was necessary to remand where trial court applied improper standard and trial court's decision lacked sufficient clarity to enable meaningful appellate review); *Brothers v. Morrone-O'Keefe Dev. Co., LLC,* 10th Dist. No. 05AP-161, 2006-Ohio-1160, ¶ 20-23 (where trial court applied incorrect standard in determining liability, reviewing court must reverse and remand to the trial court to determine weight of the evidence in light of the correct standard); *Talley v. Talley*, 10th Dist. No. 15AP-812, 2016-Ohio-3533, ¶ 27, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93 (1988), paragraph two of the syllabus (remanding where " trial court failed to provide sufficient detail to enable meaningful appellate review"). Furthermore, if, after applying the standard set forth in *Vahila*, the trial court determines the causation element was met, it should proceed to determine the appropriate amount of damages. Accordingly, we sustain appellant's second assignment of error.

**IV. Conclusion**

{¶ 32} Having sustained appellant's two assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed;*
*cause remanded with instructions.*

BROWN and SADLER, JJ., concur.

_____