[Cite as *Roush v. Blazek*, 2023-Ohio-3917.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| FRANCES ROUSH, ET AL | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| Plaintiffs-Appellants | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2023 CA 0009 |
| JAMES N. BLAZEK | : | |
| | : | |
| Defendant-Appellee | : | OPINION |


CHARACTER OF PROCEEDING:     Appeal from the Coshocton County Court of
                             Common Pleas, Case No. 2020 CI 0266


JUDGMENT:                    Reversed and Remanded


DATE OF JUDGMENT ENTRY:      October 27, 2023


APPEARANCES:

For Plaintiffs-Appellants              For Defendant-Appellee

OWEN J. RARRIC                         CRAIG G. PELINI
4775 Munson Street, Box 36963          8040 Cleveland Avenue N.W., Ste 400
Canton, OH 44735                       North Canton, OH   44720

*Gwin, P.J.*

{¶1} Appellant appeals the March 3, 2023 judgment entry of the Coshocton County Court of Common Pleas granting appellee's motion for summary judgment.

*Facts & Procedural History*

{¶2} The following facts are adduced from the depositions, exhibits attached to the depositions, and other materials submitted in support and opposition to the motion for summary judgment in this case, a legal malpractice action filed by appellant Frances Roush against appellee James Blazek, an attorney.

*Underlying Complaint and Litigation*

{¶3} On May 3, 2019, appellant Frances Roush, on behalf of herself and her three grandchildren, filed a complaint against realtor Carly Thompson, HER Realtors, and Carly's husband Jason Thompson (collectively "the Thompson Defendants") for fraud, breach of fiduciary duty, breach of contract, intentional inflection of emotional distress, civil conspiracy, and respondeat superior.

{¶4} Appellant alleged in her complaint that, during her home search, Carly Thompson suggested appellant purchase the home located at 102 Main Street in Warsaw, Ohio. Further, that Carly Thompson informed appellant the inspections on the home were "all good," and she did not need to have further inspections. Finally, appellant alleged that, subsequent to appellant's purchase of the home, she discovered a bat infestation and bat guano in the attic of the home.

{¶5} The Thompson Defendants filed a motion to compel discovery responses from appellant on August 12, 2019. Appellee (Blazek) was served with the motion, but appellant was not. On September 3, 2019, the trial court granted the motion to compel.

The entry granting the motion to compel was served on appellee, but not appellant. On September 13, 2019, appellee filed a document entitled "attorney withdrawal." The Thompson Defendants filed a motion to dismiss the fraud complaint on September 24, 2019. The motion was served on appellee, but not on appellant. Appellee filed an "amended notice of withdrawal" on October 4, 2019. The trial court granted the motion to dismiss, with prejudice, on October 15, 2019. The judgment entry of dismissal was sent to appellee, but not appellant.

*Representation by Blazek Prior to August 1, 2019*

{¶6} The appellee in this case, attorney James Blazek, filed the case against the Thompson Defendants as appellant's attorney. Appellant and appellee initially met in person to discuss the case on October 6, 2017. Appellant paid appellee $250 that day. Appellant believed this was the amount necessary to retain appellee to represent her. Appellee testified the $250 was for the consultation and for him exploring the case. Appellee later applied the $250 towards the filing fee for the complaint. In February of 2019, appellant and appellee executed a contingency fee agreement. Appellee testified he did not want to bill appellant hourly because appellant did not have the money to pay an hourly rate.

{¶7} Both appellant and appellee testified they communicated about the case primarily via phone, text, or e-mail. Both detailed communication issues they had with each other.

{¶8} Appellant testified she would call appellee to see what was going on in the case against the Thompson Defendants, but she never had a lot of conversation with him about the status of the case. Appellant was upset because it took appellee over two years

to file the complaint.  Appellant stated that, during many of her phone calls with appellee, he told her he would call her back, or he needed copies of something.  Appellant stated, "it was too much of a struggle" to communicate with appellee, she felt it was taking too long, and she felt like appellee was stalling.

{¶9}    Appellee stated he needed information he was not getting from appellant. For example, appellant told appellee there was a real estate agent that came to appellant's door and informed appellant the Thompson Defendants knew about the bat infestation prior to appellant purchasing the home.   However, appellant could not remember the agent's name or number, so it took appellee time to track down the agent and get information from her.  In addition, though he received a few responses to his questions from appellant, she often could not get her computer to work.  Appellee stated he had many telephone conversations with appellant.  Frequently, appellant would not call appellee back, so he would resort to calling her son.  Appellee stated there was a lack of communication that was frustrating for him.  Appellee testified he mailed appellant interrogatories and requests for admissions.  After this, he attempted to contact appellant multiple times to get information to respond to the interrogatories, but "I could not get her to respond or mail me anything."

{¶10}  Both parties testified as to settlement offers made during the original case. Appellant was asked, "do you know if a settlement offer was ever made on behalf of Carly Thompson and those defendants to settle the lawsuit you filed?"  She responded, "I did not know of any settlements."  Appellant testified she was not aware of the settlement offers to (1) take care of the problem or (2) buy the house back.  Appellant stated she was not interested in selling the house back because she and her grandchildren were

settled in the home. Appellant "didn't believe there was a dollar amount that they would just offer to take care of the problem." Appellant stated she never told appellee to make a settlement demand on her behalf for a specific monetary amount.

{¶11} Appellee testified the Thompson Defendants offered to buy the house back. He stated he relayed this offer to appellant. However, appellant told appellee she liked the house, and did not want to move out of the house. Appellee stated he personally discussed settlement offers with appellant of $1,500, $3,000, $3,500, the amount to repair the infestation, and buying the house back, via telephone. However, appellant refused all of these settlement offers. As to an e-mail from counsel for the Thompson Defendants regarding a settlement offer that went unanswered, appellee stated, "because the answer was no. I mean, I probably called him and said no, but, I mean, I – the answer was still no. We had to keep going."

*The Events of August 1, 2019, and Blazek's Representation Subsequent to*

*August 1, 2019*

{¶12} Appellant testified she terminated appellee on August 1, 2019. She first told him he was fired via telephone, as she stated, "I'm done," and hung up the phone on him. Later that afternoon, she sent appellee a text stating, "I Frances Roush, will no longer be needing attorney James (Jay) Blazek as of August 1, 2019 at 2:30 p.m." Appellant testified appellee did not tell her she needed to find another lawyer. However, appellant was aware that, after she fired appellee, she was going to need to find another lawyer to represent her in the litigation against the Thompson Defendants. Appellant had no expectation that appellee was going to continue working on her case because she fired him. Appellant "didn't think there was anything else he could do. He was – I was done."

Appellant had no further contact with appellee after August 1, 2019, except for one phone call she made in July of 2020 to ask for her legal paperwork. Appellant never received a bill from appellee.

{¶13} Subsequent to terminating appellee, appellant did not contact another attorney for several months. Appellant stated she discovered the case was dismissed sometime in October of 2019. In November of 2019, she contacted another attorney in Zanesville. She was supposed to have a meeting with the other attorney, but he cancelled three times, so appellant "was done."

{¶14} Appellee sent a letter to appellant on November 5, 2019, notifying her that her case was dismissed, advising her to hire new counsel, and to move to reopen the proceedings immediately. Appellee testified he followed the rules of professional responsibility after appellant terminated him on August 1, 2019. Appellee stated he did not file the discovery responses because, at that point, appellant had fired him.

*Inspection & Damages*

{¶15} Appellant testified she knew she had the right to have the home inspected, but Carly Thompson told her she did not need an inspection. Thus, she chose not to have her own inspection until after the purchase of the home, and after she discovered the bat guano. Appellant admitted that if she had done an inspection of the home, she would have discovered the bat guano, because it had been there for some time. Appellant stated if she had known about the bat guano, she would not have purchased the property.

{¶16} Appellant also testified to the damages she incurred as a result of the actions by the Thompson Defendants. She spent approximately $1,000 of her own money out-of-pocket to fix the attic, much of it going to Terminix. She also paid $500 for

a dumpster to get rid of items in the attic.  Appellant did not receive any bodily injury as a result of the presence of the bat guano, and did not claim any medical or psychological amounts as damages.  A new roof has been installed on the home.  Appellant did not pay out-of-pocket for the roof because she received a grant from the Community Housing Impact & Preservation (CHIP) Program that covered the entire cost of the new roof. Appellant has not hired anyone to do any work on the attic area since the roof was replaced two years ago.  Appellant confirmed she has not incurred any costs as a result of what appellee failed to do other than the damages she sought to obtain in the complaint against the Thompson Defendants.

{¶17}  When asked if the underlying case was a strong case, appellee stated he felt it was a strong case on the issues of negligence and fraud.  Appellee stated he knew he could get the amount to fix the attic, which he estimated at $10,000, but he was unsure if he could obtain punitive damages or attorney fees.  Appellee felt the weakness in the case was "whether [they] could get any damages in excess of the actual cost of mitigating" the bat issue.  Appellee felt $75,000 would be a good result since he was unsure whether the case would warrant punitive damages, and because the monetary damages were low.

*Legal Malpractice Case*

{¶18}   On October 13, 2020, appellant, on behalf of herself and her grandchildren, filed a complaint for legal malpractice against appellee.  The legal malpractice case is the case currently on appeal before this Court.  Appellee filed an amended answer to the complaint on November 25, 2020.

{¶19}  Appellee filed a motion for summary judgment on December 21, 2022. Appellant filed a response to the motion for summary judgment.  She attached several

affidavits and reports to her response, including the expert report of Attorney F. Richard Heath ("Heath"). Appellee filed a reply in support of the motion for summary judgment.

{¶20} The trial court issued a judgment entry on March 3, 2023, granting appellee's motion for summary judgment. As to appellant's argument that appellee failed to exercise due diligence in not timely filing the complaint, the trial court found no issue of fact because the complaint was filed within the statute of limitations and because appellant did not argue that any delay in the filing resulted in a loss of witnesses or loss of evidence. In regards to appellant's argument that she did not receive any settlement offers, the trial court found that, even if appellee did not communicate the settlement offer to appellant, she was not damaged by any lack of communication because the undisputed evidence demonstrates appellant was not interested in selling the house to the Thompson Defendants.

{¶21} As to appellant's claim that appellee failed to respond to discovery requests, the trial court found as follows: appellant terminated the services of appellant on August 1, 2019 via text message at 2:30 p.m.; appellant was aware appellee was no longer her lawyer; appellant did not rescind the termination text; appellant knew she needed to hire a new lawyer; appellant knew when she fired appellee, he would not be doing any more work for her; appellant did not contact another lawyer until November of 2019; in November and December, appellant made two appointments with lawyers, but cancelled them both; appellant made no further attempts to hire new counsel; once appellee was terminated, he had no authority to take action on behalf of appellant; appellant became aware of the dismissal in October; on November 5, 2019, appellee informed appellant that her complaint was dismissed and told her if she wished to hire new counsel and

reopen the proceedings, she had to do so immediately and failure to do so would result in a permanent bar to refiling; when appellant terminated appellee, she knew the discovery responses were due; appellant had over seven weeks from August 1, 2019 to September 23, 2019 to retain new counsel, but failed to do so; and appellee's lack of response to the interrogatories and requests for production was not a proximate cause to damage to appellant because the damages were caused by appellant's seven-week lack of response, her failure to hire new counsel, and failure to failure a motion.

{¶22} Finally, the trial court addressed appellant's argument that appellee failed to properly withdraw from representation and failed to adequately prevent prejudice to appellant's interests. The trial court found: after appellee was terminated, he had no authority to proceed with filings on appellant's behalf; appellee informed appellant her case had been dismissed and she should hire new counsel; appellant failed to take any steps to appeal or file a Civil Rule 60(B) motion despite having adequate time to do so; there is no evidence that appellant would have done anything differently if appellee had filed his withdrawal notices differently; the attorney-client relationship terminated when she terminated appellee on August 1, 2019; a violation of a Rule of Professional Conduct does not itself create grounds for an action against an attorney and the rules are not designed to be the basis for civil liability; and local rules providing for withdrawal of attorneys are administrative rules designed to notify the court that the relationship has ended.

{¶23} Appellant appeals the March 3, 2023 judgment entry of the Coshocton County Court of Common Pleas, and assigns the following as error:

{¶24} "I. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEE BECAUSE: (1) GENUINE ISSUES OF MATERIAL FACT EXIST AS TO THE DUTIES OWED BY APPELLEE TO APPELLANT, WHETHER HE BREACHED THOSE DUTIES, AND WHETHER APPELLANT WAS DAMAGED AS A RESULT, (2) THE TRIAL COURT DID NOT CONSTRUE THE FACTS IN A LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY, AND (3) THE TRIAL COURT ERRONEOUSLY FAILED TO RECOGNIZE THAT VIOLATIONS OF THE RULES OF PROFESSIONAL CONDUCT MAY BE EVIDENCE OF BREACH OF THE APPLICABLE STANDARD OF CONDUCT.

{¶25} II. IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, THE TRIAL COURT IMPROPERLY RELIED ON AN EXPERT REPORT THAT APPELLEE SUBMITTED AFTER SUMMARY JUDGMENT BRIEFING CONCLUDED."

*Summary Judgment Standard*

{¶26} Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party

against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶27} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶28} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

I.

{¶29} In her first assignment of error, appellant contends the trial court committed error in granting appellee's motion for summary judgment.

{¶30} Appellant's complaint is an action in legal malpractice. To state a cause of action for legal malpractice in Ohio, a plaintiff must show: (1) the attorney owed a duty or

obligation to the plaintiff; (2) there was a breach of that duty or obligation and the attorney failed to conform to the standard required by law; and (3) there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997). With regard to the second element (breach), a plaintiff must establish a failure to conform to the applicable standard of care. *R&J Solutions, Inc. v. Moses*, 10th Dist. Franklin No. 19AP-703, 2021-Ohio-1315. "The duty of an attorney to his client is to * * * exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to be ordinarily and reasonably diligent, careful, and prudent in discharging the duties he has assumed." *Id.*

*Representation Prior to August 1, 2019*

**{¶31}** Appellant first contends the trial court committed error in granting appellee's motion for summary judgment because there are questions of fact as to whether appellee breached his duty and caused damages in his representation of appellant prior to August 1, 2019. We agree.

**{¶32}** The trial court found no genuine issue of material fact as to whether appellee breached the standard of care by failing to present appellant with settlement offers. The trial court reasoned that, even if appellee failed to present appellant with settlement offers, the undisputed evidence demonstrates that appellant would not have accepted the settlement because she did not want to sell the home.

**{¶33}** We find the testimony of appellant and appellee demonstrates a genuine issue of material fact as to whether appellee breached his duty to appellant by failing to present her with settlement offers. Appellant testified she was not aware of the settlement

offers to take care of the problem or buy the house back. Appellant additionally presented evidence of breach and proximate damages in the form of the affidavit of Heath, who offered his expert opinion that appellee's failure to convey to appellant an offer by the Thompson Defendants to settle the dispute by repurchasing the property was a breach of appellee's duty, and was the proximate cause of damages. Appellee testified he personally advised appellant of all of the settlement offers in the case, including the offer to fix the problem and/or buy the house back, and that she refused all of the settlement offers.

{¶34} An attorney's failure to disclose a settlement offer to a client may expose the attorney to a claim of legal malpractice. *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989). Whether appellant would have accepted the settlement offer is not determinative of whether appellee breached his duty as her attorney to present her the offer, particularly on a summary judgment motion, when the allegations must be construed most favorably towards appellant.

{¶35} The trial court further found no genuine issue of material fact as to whether appellee breached the standard of care by failing to act with due diligence in not filing the complaint and starting discovery in a timely manner.

{¶36} We find the testimony of appellant and appellee demonstrates there is a genuine issue of material fact as to whether appellee breached his duty by failing to act with reasonable diligence. Appellant testified she would call appellee, but appellee did not have any case updates, and communication with appellee was a struggle. Further, Heath opined appellee breached his duty to appellant by failing to exercise due diligence in the timely filing of a complaint and timely issuance of a demand letter. Appellee stated

he needed information to file the complaint from appellant that he was not getting, and that, despite his multiple attempts to contact her, appellant would not return his calls.

**{¶37}** The trial court found no genuine issue of material fact as to whether appellee breached the standard of care by failing to property respond to discovery requests prior to August 1, 2019.

**{¶38}** We find the testimony of appellant and appellee demonstrates there is a genuine issue of material fact as to whether appellee breached his duty by failing to properly respond to discovery requests prior to August 1, 2019. Appellant testified she provided appellee with documents he requested multiples times, and he continued to ask her for these documents. Heath opined that appellee breached his duty to appellant by failing to properly respond to discovery requests from opposing counsel. Appellee testified appellant would not respond to his questions regarding the interrogatories, even after he mailed the interrogatories to her and called her multiples times.

**{¶39}** Based on the foregoing, we find there are genuine issues of material fact as to whether appellee breached his duty to appellant prior to August 1, 2019, and whether any alleged breach was the proximate cause of damages.

*Representation After August 1, 2019*

**{¶40}** Appellant also argues the trial court committed error in granting appellee's motion for summary judgment because there are questions of fact as to when appellee's representation of appellant terminated. Alternatively, appellant contends the trial court committed error in granting summary judgment because, even if appellee's representation of appellant terminated on August 1, 2019, there are questions of fact as to whether appellee breached his duty to appellant and proximately caused appellant

damages by his actions post-termination.  We agree with appellee that there are questions of fact as to whether appellee breached his duty to appellant and proximately caused appellant damages due to his actions or inactions after August 1, 2019 when appellant discharged appellee as her attorney.

{¶41}  The trial court and appellee focus on appellant's testimony that she knew she needed to get another lawyer and knew appellee would not do any work for her after August 1, 2019 because she fired him.  However, simply because appellant terminated appellee on August 1, 2019 does not automatically equate to a summary judgment finding in favor of appellee.  As detailed below, a Rule of Professional Conduct is one factor that can be considered in determining whether a lawyer breached the standard of care.  Rule 1.16(d) provides that, "as part of the termination of representation, a lawyer shall take steps, to the extent reasonably practicable, to protect a client's interest."  The comments to Rule 1.16(d) provide, "even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client."

{¶42}  The evidence demonstrates there are genuine issues of material fact as to whether appellee took reasonable steps to mitigate the consequences to appellant after August 1, 2019.  *Jackson v. McKinney*, 2nd Dist. Montgomery No. 26288, 2015-Ohio-1977.  The motion to compel filed on August 12, 2019, the judgment entry granting the motion to compel and ordering responses by September 23, 2019, and the October 10, 2019 judgment entry of dismissal were served only on appellee, not on appellant.  Appellee testified that once he was terminated, he had no authority to act on behalf of appellant.  Further, that on November 5, he notified appellant the case had been

dismissed, and advised her to immediately hire new counsel. Finally, appellee stated appellant was aware the interrogatories were due.

**{¶43}** Appellant testified she was not aware of the entry granting the motion to compel or the show cause order because appellee did not contact her to tell her about them. Further, appellant stated appellee did not send her or offer to send her the file for the case until she called him in July of 2020 to ask for her file. Heath opined that appellee did not take steps to protect appellant's interest after the August 1, 2019 termination because he did not give notice to the client of the motions and orders, and he did not allow reasonable time for employment of other counsel. Heath concluded appellee "fail[ed] to take adequate measures to prevent prejudice to Mrs. Roush's interests." Heath stated this breach of duty proximately damaged appellant.

**{¶44}** The trial court focuses on whether appellant would have done something differently had she been aware of the motions or orders. However, this is not determinative of whether appellee breached his duty to appellant. Further, we find the cases cited by the trial court and appellee deal with when the statute of limitations accrues on a legal malpractice claim, which is not at issue in this case.

**{¶45}** We find the evidence and testimony demonstrates a genuine issue of material fact exists as to whether appellee breached his duty to appellant upon his termination, and whether any alleged breach proximately caused damages to appellant.

*Rules of Professional Conduct*

**{¶46}** In their response to the motion for summary judgment, appellant included and cited several Rules of Professional Conduct that appellee allegedly violated in his representation of appellant to demonstrate that appellee breached the standard of care.

Appellant also submitted the expert report of Heath, who opined that appellee violated several of the Rules of Professional Conduct in his representation of appellant, and thus breached the duty of care owed to appellant by appellee. The trial court based its judgment, in part, on its determination that a violation of a Rule of Professional Conduct does not create grounds for an action against an attorney for legal malpractice.

{¶47} While the trial court is correct that a violation of the disciplinary rules does not, in itself, create a private cause of action against an attorney, because the rules establish standards of conduct for lawyers, the rules can be utilized as evidence to establish a breach of the standard of care. *Jackson v. McKinney*, 2nd Dist. Montgomery No. 26288, 2015-Ohio-1977; *Revolaze LLC v. Dentons US* LLP, 8th Dist. Cuyahoga No. 109742, 2022-Ohio-1392 (utilized professional conduct rule to determine if breached duty). As the Ohio Supreme Court has stated, "while the failure to comply with general rules of conduct, like the rules of [professional] conduct involved in the case before us, will not ordinarily constitute negligence per se, it is a circumstance that can be considered, along with other facts and circumstances, in determining whether the actor has acted with reasonable concern for the safety and welfare of others – that is, with due care." *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 567 N.E.2d 1291 (1991). Accordingly, the summary judgment evidence presented by appellant that appellee violated several Rules of Professional Conduct is one circumstance that can be considered, along with other facts and circumstances, in determining whether appellee breached the standard of care. Because this evidence creates a genuine issue of material fact as to whether appellee violated the standard of care, we find summary judgment inappropriate.

II.

{¶48} In her second assignment of error, appellant contends the trial court improperly relied on an expert report in its summary judgment entry that appellee submitted after summary judgment briefing concluded.

{¶49} In reviewing the trial court's judgment entry, we find no mention of the expert report appellant contends was improperly utilized. However, based upon our determination in the first assignment of error that there are genuine issues of material fact on the issue of legal malpractice, we find appellant's second assignment of error is moot.

{¶50} Based on the foregoing, appellant's first assignment of error is sustained. Appellant's second assignment of error is moot. The March 3, 2023 judgment entry of the Coshocton County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur