163 F.3d 965
 22 Employee Benefits Cas. 2216
 TRUSTEES OF THE B.A.C. LOCAL 32 INSURANCE FUND, et al.,
Plaintiffs-Appellants (97-2016)/Cross-Appellees,
v.
FANTIN ENTERPRISES, INCORPORATED,
Defendant-Appellee/Cross-Appellant (97-2058/2072).
 Nos. 97-2016, 97-2058 and 97-2072.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 13, 1998.
Decided Dec. 30, 1998.
 
 1
 Nicholas R. Nahat (argued and briefed), William Z. Kolobaric, Novara, Tesija, Michela & Priehs, Southfield, MI, for Plaintiffs-Appellants/Cross-Appellees.
 
 
 2
 Michael L. Kalis (argued and briefed), Dearborn, MI, for Defendant-Appellee/Cross-Appellant.
 
 
 3
 Before: JONES and COLE, Circuit Judges; MARBLEY, District Judge.*
 
 
 4
 MARBLEY, District Judge.
 
 
 5
 In 1995, trustees for the Tile Layers & Tile Finishers B.A.C. Local Union 32 ("Trustees") filed a civil ERISA action, pursuant to 29 U.S.C. §§ 1132 and 1145, against Fantin Enterprises, Inc. ("Fantin"), to obtain an accounting of the corporation's records and to collect any delinquent fringe benefit contributions owed by Fantin. The Trustees moved for summary judgment, which the district court granted in part, awarding the Trustees their requested audit, all deficiencies and other amounts due pursuant to a collective bargaining agreement between the Trustees and Fantin, and attorneys' fees, but finding that Fantin was not liable for contributions to the employees' insurance fund. The Trustees appeal the district court's denial of reimbursement for the insurance contribution fund, while Fantin cross-appeals the grant of summary judgment and the validity of the attorneys' fees award. For the reasons set forth below, we AFFIRM in part and REVERSE in part the judgment of the district court, and REMAND for further proceedings in accordance with this opinion.
 
 I.
 
 6
 Fantin, a Michigan corporation engaged in the business of ceramic tile and marble installation, is owned by Ralph E. Fantin and his son, Ralph B. Fantin. On September 27, 1991, Fantin became a signatory to a collective bargaining agreement ("1991 agreement") between the Tile Layers & Tile Finishers B.A.C. Local 32 of Michigan ("Union") and the Detroit Ceramic Tile Contractors Association ("Association"). The 1991 agreement governs wages, benefits and other rights and responsibilities of the signatories. Among the obligations imposed by the agreement was that Fantin was to employ only Union members or require Union membership shortly after hiring, that Fantin was to make fringe benefit contributions to the Trustees for each covered employee, and that Fantin was to submit to audits upon request with appropriate restitution to be made in the event of shortfalls. The agreement also contained an "evergreen clause" that extended its terms for successive one-year periods after the expiration date of May 27, 1992, unless a party gave written notice of its intent to terminate or modify the agreement at least sixty days prior to the expiration date.
 
 
 7
 On November 10, 1992, the Union and the Association entered into a new collective bargaining agreement ("1992 agreement") covering the period from June 18, 1992, through May 31, 1995. Fantin was not party to this second agreement.
 
 
 8
 By 1993, Ralph E. Fantin and Ralph B. Fantin were the only employees of their corporation. On November 15, 1993, the individuals wrote a letter notifying the Union of their intent to resign from the Union as of November 1, 1993. The letter did not state that Fantin Enterprises was terminating its collective bargaining agreement with the Union. On June 29, 1994, Fantin sent a second letter to the Union in which the corporation unequivocally expressed its intention to terminate its association with the Union.
 
 
 9
 On February 22, 1995, the Trustees demanded an audit from Fantin, and Fantin refused. The Trustees obtained a court order enabling them to conduct a partial audit, which revealed that Fantin owed $26,213.74 in fringe benefits contributions. The Trustees then filed the present action seeking a complete audit and remuneration of Fantin's deficiency.
 
 II.
 
 10
 The district court concluded that, although the Fantin letter of November 15, 1993 constituted notice that the individual employees were terminating their affiliation as Union members, the letter did not comply with the strict sixty-day notice requirement under the evergreen clause of the 1991 agreement. Rather, the court found that the June 29, 1994 letter served to terminate the contract between Fantin and the Union and, thus, Fantin remained liable under that agreement for the appropriate contributions until May 27, 1995. The court also found that the Trustees were entitled to a full audit, liquidated damages and attorneys' fees, but any award would be reduced by the amount of unpaid insurance contributions, because the individual Fantins had withdrawn from the Union in November 1993 and no party to the action had been paying into the insurance fund for these two individuals from that date.
 
 
 11
 The Trustees now appeal the district court's ruling with regard to the insurance fund issue. Fantin cross-appeals the district court's conclusion that Fantin remained a party to the 1991 agreement after receipt of the 1992 agreement between the Union and the Association, and further argues that the Trustees did not "prevail" at the district court level, thus nullifying the award of attorneys' fees.
 
 III.
 
 12
 We review a grant of summary judgment de novo using the same test employed by the district court. See Brooks v. American Broad. Cos., 932 F.2d 495, 500 (6th Cir.1991). Generally, summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Only factual disputes which may have an effect on the outcome of a lawsuit under substantive law are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To be "genuine," a dispute must involve evidence upon which a jury could find for the nonmoving party. Id. The burden is upon the moving party to show that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 IV.
 A.
 
 13
 The district court did not discuss the relationship between the 1992 and 1991 agreements. Fantin argues that the 1992 agreement between the Union and the Association superseded the 1991 contract in terms of Fantin's relationship to the Union, despite the fact that Fantin was not a party to the 1992 agreement. Fantin contends that its receipt of the 1992 agreement acted as a sixty-day notice of termination for purposes of the evergreen clause in the 1991 agreement. The Trustees respond that the mere existence of the 1992 agreement, to which Fantin was not a party, was legally insufficient to trigger the termination provision. We agree with the Trustees' reasoning on this issue.
 
 
 14
 As a threshold matter, evergreen clauses are legally valid. See, e.g., Eastern Enterprises v. Apfel, 524 U.S. 498, 118 S.Ct. 2131, 2140, 141 L.Ed.2d 451 (1998) (discussing evergreen clause as legitimate contractual provision); International Union of Operating Engineers, Local 369 v. Office & Professional Employees Union, Local 367, 66 F.3d 325, 1995 WL 538537 (6th Cir.1995) (describing valid evergreen clause in collective bargaining agreement); Barrick Gold Exploration, Inc. v. Hudson, 823 F.Supp. 1395, 1405 (S.D.Ohio 1993) (discussing valid evergreen clause in trust agreement). When a contract is renewed via the operation of an evergreen clause, all of the attendant contractual obligations naturally continue for the period of renewal.
 
 
 15
 In this case, the renewal clause of the 1991 Agreement, stated:
 
 
 16
 It is agreed by both parties that this Agreement shall remain in full force and effect through May 27, 1992 and from year to year thereafter unless written notice of intent to terminate or modify the Agreement be submitted, at least sixty (60) days prior to the expiration date by either party to the other.
 
 
 17
 Thus, in any given year, the 1991 agreement--and Fantin's obligation to pay contributions to the Union--would continue in full force until May 27 of the following year, if the contract was not explicitly terminated by either party sixty days prior to May 27 of that year. In 1992, the Union entered into a similar collective bargaining agreement with the Association. Although Fantin did not sign or in any way become party to this agreement, it now argues that the existence of the later contract constituted written notice of intent to terminate or modify the 1991 agreement, per the evergreen clause. Fantin's position is unsupportable.
 
 
 18
 Unless ambiguous, a collective bargaining agreement is limited to the language contained in its four corners. See Baldwin-Montrose Chemical Co. v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO, 383 F.2d 796, 798 (6th Cir.1967). The termination clause in the 1991 agreement provides clear, unambiguous terms upon which the contract may be canceled: through written notice by either party of their intent to terminate it. A careful examination of this agreement reveals no language suggesting that the simple existence of a later contract, in which one party was not even involved, could act as the written termination of the 1991 contract. Further, nothing in the 1992 contract suggests that it was meant to serve as written termination of the 1991 agreement. Indeed, "[w]hen such clear and specific language in a labor agreement is at issue, federal courts are uniform in their strict interpretation of such language." Irwin v. Carpenters Health and Welfare Trust Fund For California, 745 F.2d 553, 556 (9th Cir.1984). This Court would effectively rewrite the terms of these contracts were we to find that the 1992 agreement terminated the 1991 agreement. This we cannot do.
 
 
 19
 Moreover, Fantin can point to no authority--indeed there is no authority--which supports the proposition that a later agreement, to which the relevant party is not implicated, will act as a notice of termination to an earlier contract entered into by that entity.[1] We suspect that the district court did not focus on the 1992 agreement between the Union and the Association because this agreement is irrelevant for the purposes of evaluating the contractual relationship between Fantin and the Union.
 
 
 20
 We agree with the rest of the district court's reasoning on this issue, including its finding that Fantin's June 29, 1994 letter terminated Fantin's agreement with the Union. Therefore, Fantin is responsible for contributions under the 1991 agreement from September 27, 1991 until May 27, 1995. We affirm the judgment below as to this issue.
 
 B.
 
 21
 We disagree, however, with the district court's conclusion that Fantin is not responsible for any contributions to the insurance fund after November 15, 1993. As a matter of law, collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of the union. See Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 318 (6th Cir.1984); see also Manning v. Wiscombe, 498 F.2d 1311, 1313 (10th Cir.1974); Pipefitters Welfare Fund, Local 597 v. Stangard Refrigeration Service, Inc., No. 83 C 6374, 1984 U.S. Dist. LEXIS 15244, at * 5-7 (N.D.Ill.1984). Further, under the 1991 agreement, contributions were due on behalf of all employees doing work within the bargaining unit covered by the collective bargaining agreement. The agreement contained a clause requiring that each person working for the employer either be a member of the Union or sign up to become a Union member within eight days of work. Another clause requires all signatory employers to remit $2.50 in fringe benefit contributions to the Insurance Fund for each employee performing covered work. These contributions were contractually required for all employees--not only for Union employees. "Employees covered by the trust agreements are therefore defined by the nature of their work and not their union status." Pipefitters, 1984 U.S. Dist. LEXIS 15244, at * 6.
 
 
 22
 The 1991 agreement explicitly provided for such a contribution scheme and, as we have ruled, the Fantins were contractually bound by this agreement until May 27, 1995. The fact that Fantin's individual Union members withdrew from the Union on November 15, 1993 is inconsequential in determining Fantin's obligations to the insurance fund for these employees. Under the 1991 agreement, Fantin was obligated to remit these contributions for each employee, regardless of his Union status. Therefore, we reverse the district court on this issue, and find that Fantin is responsible for the insurance fund contributions through its contractual term with the Union, i.e., through May 27, 1995.
 
 C.
 
 23
 The district court awarded the Trustees attorneys' fees, after finding that Fantin was liable for contributions through May 27, 1995. Section 502(g) of ERISA provides that a defendant shall pay a prevailing fiduciary reasonable attorneys' fees when "a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2)(D). Fantin now claims that the district court did not render a judgment "in favor" of the Trustees' employee benefit plan because only Union dues were awarded and, therefore, attorneys' fees are not proper.
 
 
 24
 The district court's order, however, awarded the Trustees more than mere Union dues. Fantin was ordered to supply all records requested by the Trustees, to submit to an audit, and to pay the deficiencies and any other amount due pursuant to the 1991 agreement. Further, this Court has found that Fantin is also liable for insurance contributions for the employee benefit plan through May 27, 1995. A judgment in favor of the plan has been awarded and the Trustees are therefore entitled to reasonable attorneys' fees. See Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir.1995). The district court noted that it would "award attorney fees following completion of this Order's requirement in an amount to be determined." We affirm this decision, and leave it to the district court to determine appropriate payment of attorneys' fees consistent with this opinion.
 
 V.
 
 25
 For the foregoing reasons, the district court's decision as to the authority of the 1991 contract and the award of attorneys' fees to the Trustees is AFFIRMED, while its ruling barring the Trustees' collection of Fantin's deficient insurance contributions is REVERSED. We REMAND this case to the district court for further proceedings in accordance with this opinion.
 
 
 
 *
 The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Rather, case law weighs against Fantin. For example, in a case like the present one, the court in Lewis v. Mearns, 168 F.Supp. 134 (N.D.W.Va.1958), resolved the situation against the employer. The defendant, an operator of a small coal mining operation, was one of many such entities which entered into a 1952 collective bargaining agreement with the United Mine Workers of America ("UMWA"). The defendant later argued that the contract became ineffective as to him when the UMWA and other coal operators entered into a new, somewhat modified contract in 1955, although he did not himself sign the 1955 agreement. The court held that the 1955 contract did not serve to trigger the sixty-day termination clause in the 1952 agreement, and, therefore, the 1952 contract remained effective as to the defendant, and the defendant was liable for all obligations incurred until he gave proper notice of termination