NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 08a0331n.06

Filed: June 11, 2008

No. 07-3641

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

BOARDS OF TRUSTEES OF THE OHIO
LABORERS' FRINGE BENEFIT PROGRAMS, c/o
Matt Archer, Administrative Manager,

      Plaintiff-Appellee,

      v.

TIMOTHY JENKINS, Individually doing business as
Dan Ray Construction, Inc. also known as Dan Ray
Construction; PAUL JENKINS, Individually doing
business as Dan Ray Construction, Inc. also known as
Dan Ray Construction; DAN RAY
CONSTRUCTION, INC., doing business as Dan Ray
Construction,

      Defendants-Appellants.

On Appeal from the United
States District Court for the
Southern District of Ohio at
Columbus

_____/

**Before:**     **GUY, SUHRHEINRICH, and GIBBONS, Circuit Judges.**

    **PER CURIAM.**    This is an ERISA case brought by the Boards of Trustees of the

Ohio Laborers' Fringe Benefit Programs (the Programs) against defendants Dan-Ray

Construction, Inc., and its principals, asserting defendants' failure to make required wage and

welfare contributions on behalf of its employees in violation of 29 U.S.C. §§ 185(c)

and1132(a)(3). Defendants assert the district court's entry of summary judgment for the

Programs was erroneous because (1) their records met the requirements of 29 U.S.C. § 1059(a)(1), (2) there were genuine issues of material fact as to the accuracy of the Board's audit calculations, and (3) the award of attorney fees to the Programs was improper. Because the district court did not err in finding that the defendants were liable for the contested contributions, as well as attorney fees, its judgment is affirmed.

## I.

Dan-Ray Construction, Inc., is a construction business located in Cleveland, Ohio, run by Timothy Jenkins and his father, Paul Jenkins. The Ohio Laborers' Fringe Benefit Programs, represented here by their Boards of Trustees, comprise three employee benefit trust funds and one labor management cooperative trust. By virtue of its agreement with a local affiliate of the Ohio Laborers' District Council of Ohio, Dan-Ray Construction and/or its principals were obligated under the Ohio Highway-Heavy Municipal and Utility Construction State Agreement (the CBA) to file reports with and make fringe benefit contributions to the Programs on behalf of its employees performing work covered by the CBA.

The Programs filed suit in the district court for the Southern District of Ohio in January 2005 alleging defendants' failure to make required fringe benefit contributions of $39,610.89 from November 2002 through September 2004. The Programs also sought liquidated damages of 10%, interest of 1% per month, and attorney fees. All the contributions the Programs alleged were due and owing were generated from work

performed by Dan-Ray as a subcontractor for Utilicon Corporation. Under the subcontract, Dan-Ray provided Utilicon with workers who were supervised by Utilicon foremen. Dan-Ray classified its employees on the Utilicon project as either (1) "laborers," its name for the union members, or (2) "policemen," its "catch-all" term for workers who performed odd jobs, such as runners or security guards for its equipment in the field.

In May 2005 the parties consented to referral of the case to Magistrate Judge Norah McCann King for disposition. A year later the Programs moved for summary judgment, which was granted when the magistrate found that defendants' lack of specific records concerning work allegedly performed outside the scope of the CBA subjected them to liability under ERISA for contributions on all work performed. The judgment entered by the magistrate, totaling $86,956.43, included liquidated damages, interest, and attorney fees. Defendants timely appealed.

## II.

We review a district court's decision on a motion for summary judgment *de novo*. *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.     Audit Accuracy and Record Keeping

Defendants' first two claims are that the district court erred in (1) finding defendants' records to be insufficient under ERISA's reporting requirements found at 29 U.S.C. § 1059(a)(1), and (2) entering summary judgment for the Programs when a genuine issue of material fact existed as to the accuracy of their audit. Defendants argue that the Programs' audit was erroneous, resulting in a demand for "unpaid contributions for at least seventeen non-union employees who performed tasks not within the work jurisdiction of the CBA and for fringe benefit contributions paid to another union."[1] In entering summary judgment for the Programs, the magistrate found that the CBA, as well as established precedent, required that fringe benefit contributions be made in relation to the scope of the work performed by defendants' employees, regardless of union membership. It then determined that even if some of the work performed by non-union employees fell outside the scope of work contemplated by the CBA and was not subject to contributions under the letter of the CBA, defendants had failed to provide sufficient information to support such a finding, and therefore all work performed required fringe benefit contributions.

As the magistrate found, defendants' contention that the CBA requires contributions only as to work performed by members of the union is incorrect. Defendants' contribution obligations to the Programs under the CBA extend to *any work* within its jurisdiction. As stated in Article I of the CBA, any person, firm, or corporation who becomes a signatory to

---

[1]Although defendants refer to an improper claim for contributions on behalf of the member of a different union, this argument was not made to the district court and, therefore, has been waived. *See Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996).

the agreement shall be bound to make the contributions set forth in the CBA for "all work performed within the work jurisdiction outlined in Article II of this Agreement." (Emphasis omitted.)  The CBA later states that "[f]ringe benefit contributions shall be paid at the rate specified in Exhibit B for all hours paid to each employee by the Contractor under this Agreement."[2]  (Emphasis omitted.)

Defendants' "policemen," according to their own deposition and affidavit testimony, took on jobs such as "traffic control workers, parts runners, street sweepers, security personal [sic] or watchmen who watched jobs sites when work was not taking place[,] and other non-labor related jobs."  Such jobs certainly placed these workers under the jurisdiction of the CBA when they were performing tasks such as security and watching job sites.  *See* n.2.  Tellingly, Jenkins revealed in his affidavit that employees initially classified as "policemen" would be reclassified as "laborer" at the point they joined the union, rather than when their tasks changed.  As the magistrate found, "[t]here is no doubt that the determinative

---

[2]Employees are defined in the CBA in Article II, which states that

13. Employees shall not include professional engineering personnel, clerical employees, time-keepers, superintendents, assistant superintendents nor any supervisory personnel, but shall include all other persons employed by the Contractor in the performance of any of the various classes of work covered by this Agreement, coming within the jurisdiction of the Union as set forth in Exhibit A, excepting where a Contractor finds that he needs an exclusive Laborer foreman.

Exhibit A lists 17 categories of work covered by the CBA, including "**SIGNAL MEN -** Signal men in all construction work," and "**FLAGPERSON, HAZARDOUS WASTE REMOVAL, LEAD ABATEMENT**" (not further defined), and "**WATCHPERSON** - (A) Responsible to patrol and maintain a safe traffic zone including but not limited to barrels, cones, signs, arrow boards, message boards etc.  Responsible to be a watchperson to see that equipment, job and office trailers etc. are secure."

characteristic of a "policeman" employed by the business is that the employee is not a member of the union."

The magistrate properly found, quoting *Iron Workers' Local No. 25 Pension Fund v. MCS General Contractors, Inc.*, that "'defendants were obliged to make contributions to funds for covered work performed by [employees] irrespective of their status under the plan.'" *Iron Workers*, Nos. 98-2107, 99-2262, 2000 WL 1276830 (6th Cir. Aug. 30, 2000) (unpublished disposition). This was not error. The Programs also cite to *Trustees of B.A.C. Local Ins. Fund v. Fantin Enterprises, Inc.*, 163 F.3d 965 (6th Cir. 1998), where the court stated "[a]s a matter of law, collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of the union." *Id*. at 969.[3] Defendants were, accordingly, responsible for contributions on all work falling within the jurisdiction of the CBA, whether or not those performing the work were members of the union when the work was performed. *See also Teamster's Local 348 Health & Welfare Fund. v. Kohn Beverage Co.*, 749 F.2d 315, 318 (6th Cir. 1984).

Concerning tasks allegedly performed outside of the scope of the CBA, for which defendants have no contractual obligation to remit contributions, the magistrate also correctly determined that "[w]here an employer has failed to keep records sufficient to permit determination, with precision the amount of contributions due the benefit funds, 'an employer is liable for contributions on all hours worked during the period in which it has

---

[3]As in *Fantin*, the CBA in this case contained a "union shop clause," requiring that workers be members of the union or join the union within eight days of commencing work.

been demonstrated that some covered work was performed.'" *Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 697 (6th Cir. 1994). Defendants do not dispute this proposition, but vaguely assert that they notified the Programs that there were records "available" sufficient to create a genuine issue of material fact about the accuracy of the audit. Defendants criticize the Programs' failure to "[examine] or even [request] copies of those records," but do not identify a single document in their own "records" demonstrating that summary judgment was improper. The magistrate was also correct in determining the conclusory affidavits of Tim Jenkins and bookkeeper Karen Adams, asserting that contributions were not due for work performed by non-laborer "policemen," did not generate a question of material fact.

Defendants' claim that the magistrate erred in finding that their records were insufficient under both the CBA and ERISA's record keeping and reporting requirements, which provide that employers are required to "maintain records with respect to each of [their] employees sufficient to determine the benefits due or which may become due to such employees," 29 U.S.C. § 1059(a)(1), is equally unavailing. Defendants state simply that "Dan-Ray provided the Board with payroll and fringe benefit contribution records that detail the name of the employee and the number of hours that employee worked." As noted above, defendants further contend that they made certain other records "available to the Board" for inspection or copying, such as weekly check registers for 2002-04, union work dues monthly forms for 2002-04, internal spreadsheets, a letter and report from their bookkeeper, and a

May 2005 letter from the Programs to Dan-Ray Construction, along with attached documents, but that the Programs "never examined or even requested copies of those records." *Id*. at 15. In fact, these documents were merely listed in a letter from defendants' counsel to counsel for the Programs, and do not appear to be a part of the record. These records therefore remained exclusively in the possession of the defendants. Moreover, defendants do not identify documents within those records that are "sufficient to determine the benefits due" to their employees.

## B.    Attorney Fees

Defendants concede that the Programs would be entitled to a reasonable attorney fee under 29 U.S.C. § 1132(g)(2) if they were to prevail, but contend that the award by the magistrate was "premature" prior to the outcome of this appeal.[4] 29 U.S.C. § 1132(g)(2) provides that, where "a judgment in favor of the plan is awarded, the court shall award the plan—. . . (D) reasonable attorney's fees and costs of the action, to be paid by the defendant . . . ." Defendants provide no authority for their contention that the award was "premature," and they have not argued that the fee was unreasonable.

The district court is **AFFIRMED,** and the case is **REMANDED** for such further proceedings as may be necessary.

---

[4]The Programs, on the other hand, point out that attorney fees are mandatory under both § 1132(g)(2) and the CBA, stating that the issue should be remanded to the district court for an award of attorney fees incurred in defending this appeal.