NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0187n.06

No. 23-3423

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 29, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| PIERRE INVESTMENTS, INC.; PIERRE INVESTMENTS, INC. dba Gehard Luxury Homes; KEN GAZIAN, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| ANSPACH MEEKS ELLENBERGER, LLP; ANSPACH LAW; KENT D. RIESEN, | ) ) | |
| Defendants-Appellees. | ) ) | OPINION |

Before: GIBBONS, WHITE, and THAPAR, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Plaintiffs-Appellants—Pierre Investments ("Pierre"), a Texas corporation; Ken Gazian, Pierre's sole shareholder; and Gehard Luxury Homes ("Gehard"), a subsidiary of Pierre—appeal the dismissal of their legal-malpractice claim against Defendants-Appellees—Kent Riesen, Anspach Meeks Ellenberger, LLP, and Anspach Law (collectively, the "Anspach Defendants"). We AFFIRM as to Gazian and Gehard, and REVERSE and REMAND for further proceedings as to Pierre.

## I. Facts

### A. Underlying Litigation

In 2018, Pierre entered into a Loan Commitment Agreement ("LCA") with CLS Capital Group ("CLS"), a company owned by Reynaldo Uballe, Jr.[1]  Pierre intended to develop luxury homes on a ten-acre site in Texas, and CLS agreed to lend $10,000,000 to finance the project's construction.  As part of the agreement, Pierre was required to make an initial $75,000 commitment payment to cover legal fees, risk-management costs, and other miscellaneous transaction expenses.

At the time, Pierre was represented by Walter Musgrove III.  CLS was frequently represented by Brandon Rehkopf and Mark Mockensturm, two attorneys at the Mockensturm Law Firm, but the exact nature of their attorney-client relationship with respect to the loan agreement is unclear.[2]  Before executing the agreement, Musgrove contacted Rehkopf to obtain "assurance that CLS . . . was a good company and capable of lending ten million dollars."  Rehkopf told Musgrove that Mockensturm had represented CLS for many years, that Uballe was capable of closing on the loan, and that CLS was the actual lender, not a third-party broker.  Apparently, Musgrove sought this additional assurance because Ken Gazian, the owner of Pierre, had previous experience dealing with fraudsters.

On November 10, 2018, as required by the agreement, Pierre mailed two cashier's checks totaling $75,000 to CLS.  CLS confirmed receipt of the funds, but never issued the loan.[3]  By February 2019, Pierre suspected fraud.

---

[1] CLS was purportedly located in Toledo, Ohio, and registered in Delaware.  However, CLS was a nonexistent entity in 2018—a critical fact unknown to Pierre that we will discuss later.

[2] Mockensturm claimed that it did not represent CLS in the specific contract at issue here but had represented CLS and Uballe in the past.  Pierre believed that Mockensturm represented CLS the entire time.

[3] Rather than deposit the funds into the account listed on the agreement and on the cashier's checks themselves (allegedly an escrow account maintained by Mockensturm), Uballe personally endorsed the checks and deposited them into a different account—one he maintained himself.  Pierre learned this only much later.

Pierre contacted Kent Riesen, an attorney at Anspach Meeks Ellenberger, LLP to discuss fraud claims against CLS and its attorneys. On October 28, 2019, the Anspach Defendants filed suit on Pierre's behalf against CLS, Uballe, and the Mockensturm attorneys in the Lucas County, Ohio, Court of Common Pleas. The amended complaint asserted claims of fraud against all Defendants, legal malpractice against the Mockensturm Defendants, and breach of contract, unjust enrichment, promissory estoppel, and deceptive trade practices against the CLS Defendants.

On September 10, 2020, the state court dismissed the malpractice claims because no attorney-client relationship existed between Pierre and the Mockensturm Defendants. On March 23, 2021, following motions for summary judgment, the state court dismissed all of Pierre's remaining claims except the breach-of-contract claim against CLS. *Pierre Invs., Inc. v. CLS Cap. Grp., Inc.*, No. CI-2019-4258, 2021 WL 9978553, at *16 (Ohio Com. Pl. Mar. 23, 2021) ("*Pierre I*"). The state court granted summary judgment to the Mockensturm Defendants on the fraud claim, finding that Pierre failed to prove what Mockensturm said was false, that Mockensturm had no duty to disclose to Plaintiffs, and that Plaintiff was not justified in relying upon anything they said. *Id.* at *6–9. And because the agreement with CLS contained an integration clause, the state court concluded that all claims against CLS would be resolved under the breach-of-contract claim. *Id.* at *13. The court also dismissed Uballe as a defendant because CLS was a corporation and Uballe was not a party to the agreement. *Id.*

A jury trial was scheduled for July 26, 2021. *Pierre Invs., Inc. v. CLS Cap. Grp., Inc*, No. CI-2019-4258, 2021 WL 9978551, at *2–3 (Ohio Com. Pl. Oct. 28, 2021) ("*Pierre II*"). However, on June 8, 2021—without giving written notice to Pierre—the Anspach Defendants withdrew as

trial counsel.[4] *Id.* This left Pierre scrambling to find new counsel. On June 25, Cynthia Rodgers filed a notice of appearance for Pierre, but Pierre still sought counsel for trial.[5] *Id.* The trial was rescheduled for September 20. *Id.* Understanding that new counsel could not prepare for a jury trial in time, Pierre withdrew its request for a jury trial.

At some point after the state court dismissed all claims except the breach-of-contract claim against CLS, but before trial on that claim, Gazian learned that CLS had been defunct for years and no longer existed as a corporation. A declaration dated August 17, 2021, from the Delaware Secretary of State stated that CLS was "no longer in existence and good standing" because it became "inoperative and void" in 2012 for the "non-payment of taxes." R. 11-4, PID 395. Gazian also learned that the SEC, in a final decision issued in 2014, revoked CLS's registration of securities due to the "repeated failure to file required periodic reports." R. 1-5, PID 38–41.[6] Pierre alleges that the Anspach Defendants were negligent in their failure to uncover this critical information in earlier stages of state litigation. *See, e.g.*, R. 11, PID 374 ("[Anspach] [f]ailed to complete basic research into the Secretary of State records to discover CLS Capital Group Inc was defunct before the final deadline to amend the complaint."). The first time the state court was notified that CLS may not exist was in a motion filed on August 19, 2021. *Pierre II*, 2021 WL 9978551, at *3. As a result, the state court had not considered this information when it dismissed Pierre's earlier claims.

In late August, Rodgers withdrew as counsel. *Id.* at *2–3. Because Pierre was a corporate entity, it could not represent itself in court without counsel. *Id.* at *3. That left Pierre again

---

[4] It is unclear why the Anspach Defendants withdrew at the last minute, and Appellees do not explain why in their brief.

[5] Rodgers also represented Appellants for some of the district-court proceedings in the present case.

[6] Prior SEC documentation described CLS as a "shell company" with "no specific business plan or purpose" because "it has no or nominal assets . . . and no or nominal operations." R. 1-6, PID 42, 45.

scrambling to find new counsel in time for trial. Although Pierre ultimately found counsel, the attorney filed no trial brief, exhibit list, or witness list for Pierre at trial. *Id.* at *4.

Following a bench trial, the state court ruled against Pierre. *Id.* at *15. In rejecting Pierre's contract claim, the court concluded that the documentation Pierre provided to CLS to secure the funding fell "well short of any objective standard of reasonableness for a $10 million loan." *Id.* Moreover, the court concluded that it could not rule against CLS because it was a nonexistent defendant and any judgment against it would thus be void. *Id.* at *14–15. Because Uballe had been dismissed as a defendant earlier, no claims survived. *Id.* Without addressing the merits of the breach-of-contract claim itself, the Ohio Court of Appeals affirmed, holding that CLS lacked the capacity to be sued by virtue of its status as a nonexistent entity. *Pierre Inv., Inc., v. CLS Cap. Grp., Inc.*, 202 N.E.3d 870, 889 (Ohio Ct. App. 2022) ("*Pierre III*").

## B. The Instant Case

On June 3, 2022, Pierre, Gehard, and Gazian initiated this action against the Anspach Defendants, alleging one count of legal malpractice. In an amended complaint filed in September, Plaintiffs detailed nearly twenty pages of alleged failures by the Anspach Defendants in their deficient representation of Pierre in the prior state-court suit against CLS and related Defendants. The district court summarized the primary allegations as:

> [F]ailure to conduct thorough factual discovery; failure to accurately plead the relevant claims; failure to file interlocutory appeals, motions to suppress, an amended complaint, or other filings with the court; failure to prepare for trial and withdrawing as counsel five weeks before a scheduled jury trial; failure to name and serve certain parties; failure to assert defenses to a counterclaim; and, overall, failure to prioritize the case and pursue it competently.

R. 19, PID 597 (citations omitted).

The Anspach Defendants moved for judgment on the pleadings. The district court first dismissed the claims brought by Gehard and Gazian because they lacked an attorney-client

relationship with the Anspach Defendants. The district court also dismissed Pierre's malpractice claim, concluding that none of the claims brought in the underlying state-court action—as well as the claims that Pierre argues Anspach should have brought—would have been viable even in the absence of the Anspach Defendants' deficient performance. Alternatively, the district court determined that a malpractice action could not proceed because Pierre could not demonstrate that he would have recovered from CLS, a defunct entity, absent Anspach's failures.

Pierre, Gehard, and Gazian appeal.

## II. Standard of Review

We review a district court's judgment on the pleadings de novo, *Brent v. Wayne Cnty. Dep't of Hum. Serv*s., 901 F.3d 656, 689 (6th Cir. 2018), applying the same standard used to review a motion to dismiss, *Moore v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021). To survive the motion, a plaintiff must allege facts that are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. As in a motion to dismiss, the court must accept all factual allegations in the complaint "as true and construe the complaint in the light most favorable" to the non-moving party. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).

## III. Malpractice

Ohio law, which governs this dispute, requires a plaintiff to show five elements to establish a legal-malpractice claim based on negligence: (1) an attorney-client relationship, (2) a professional duty arising from that relationship, (3) a breach of that duty, (4) proximate cause, and

(5) damages. *Shoemaker v. Gindlesberger*, 887 N.E.2d 1167, 1169–70 (Ohio 2008).[7] Appellees argue that Gazian and Gehard were properly dismissed as plaintiffs because they did not have the requisite attorney-client relationship with the Anspach Defendants. They further argue that Pierre's malpractice claim should be dismissed because it cannot show proximate cause or damages. We agree that Gazian and Gehard are not proper parties, but we remand Pierre's claim of malpractice to the district court for further analysis of the issues.

## A. Gehard and Gazian

Only Pierre, a corporation, was a party to the contingent-fee agreement with the Anspach Defendants. Gehard was not listed on the agreement at all, and Gazian signed the document solely on the corporation's behalf.

Generally, an attorney is liable only to the attorney's own client for malpractice, not to third parties. *Shoemaker*, 887 N.E.2d at 1170. "This rule is rooted in the attorney's obligation to direct attention to the needs of the client, not to the needs of a third party." *Id.* However, third parties may still raise a malpractice claim if they are in privity with the client for whom the legal services were performed. *Id.* Privity is "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter." *Id.* (quoting Black's Law Dictionary (8th ed. 2004)). Ohio is one of a few states that retains a "strict privity rule." *Id.*

In a limited partnership, individual limited partners are in privity with the business because "an aggregate of individuals . . . does not constitute a separate legal entity." *Arpadi v. First MSP Corp.*, 628 N.E.2d 1335, 1338 (Ohio 1994). However, a corporation is a distinct legal entity. *Id.*

---

[7] In earlier cases, Ohio courts used three elements for malpractice claims, but they overlap with the five elements used today. *See, e.g.*, *Vahila v. Hall*, 674 N.E.2d 1164, 1169 (Ohio 1997) (listing the elements as (1) that the attorney owed a duty or obligation to plaintiff, (2) that there was a breach of that duty and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the negligence and the resulting damage/loss).

As a result, a "lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity." *Id.* (quoting Ohio Code Prof. Resp., EC 5-18 (superseded eff. Feb. 1, 2007)). On this basis, the district court determined that no privity existed between Pierre and the other plaintiffs.

Appellants disagree, reasoning that because Gazian is the sole shareholder and officer of Pierre/Gehard, all three parties are essentially one and the same. By extension, Appellants argue that all three plaintiffs shared the same legal interests and were in privity. And Appellants further argue that because Gazian and Gerhard suffered distinct harms from the alleged malpractice, each party had standing to sue.[8]

But Appellants fail to cite a single Ohio malpractice case where a shareholder was held to be in privity with a corporation; indeed, relevant case law suggests that such an extension would be improper. *See, e.g.*, *Omega Riggers & Erectors, Inc. v. Koverman*, 65 N.E.3d 210, 221 (Ohio Ct. App. 2016) ("Significantly, there is no Ohio case that has extended the privity concept to allow a shareholder, who does not have a direct attorney-client relationship with corporate counsel, to sue a corporation's attorney for malpractice. We do not believe we should create one."); *Stuffleben v. Cowden*, 2003-Ohio-6334, *6 (Ohio Ct. App. 2003) ("Ohio law has consistently held that 'an attorney's representation of a corporation does not make that attorney counsel to the corporate officers and directors as individuals.'" (quoting *Nilvar v. Mercy Health Sys. W. Ohio*, 143 F. Supp. 2d 909, 913 (S.D. Ohio 2001))). Thus, the district court properly dismissed the malpractice claims brought by Gazian and Gehard in accordance with Ohio's "strict privity" rule.

---

[8] Gazian allegedly incurred debt to fund the earlier litigation, including the hiring of new attorneys to cure mistakes made by Appellees after they withdrew as counsel. Gehard was allegedly harmed because it would have profited from the planned Texas development.

### B. Proximate Cause Standard

The fourth element of a malpractice claim requires a plaintiff to show a "causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 674 N.E.2d 1164, 1169 (Ohio 1997). There are two standards used in Ohio to resolve the causation element of a legal-malpractice claim: (1) the strict "case-within-a-case" standard and (2) a more liberal "some-evidence" standard. Each standard requires some assessment of the viability of the underlying claims.

### 1. "Case-within-a-case" Standard

The "case-within-a-case" test is the traditional causal standard. *Env't Network Corp. v. Goodman Weiss Miller, L.L.P.*, 893 N.E.2d 173, 177 (Ohio 2008). Under this standard, "the issues that would have been litigated in the previous action are litigated between the plaintiff and the plaintiff's former lawyer, with the latter taking the place and bearing the burdens that properly would have fallen on the defendant in the original action." *Id.* (quoting Restatement of the Law 3d, Law Governing Lawyers (2000) 390, § 53, cmt. b). The standard requires plaintiffs to show that they would have succeeded in the underlying matter but for the attorney's negligence. *Id.* Even so, the plaintiff's burden may be more relaxed than it would have been in the underlying case because "the trier of fact may consider whether the defendant lawyer's misconduct has made it more difficult for the plaintiff to prove what would have been the result in the original trial." *Id.* (quoting Restatement of the Law 3d, Law Governing Lawyers (2000) 390, § 53, cmt. b). The "case-within-a-case" standard is used where the merits of the underlying litigation are dispositive in determining whether the plaintiff suffered a loss. *Id.* In *Environmental Network Corp.*, for example, the plaintiff alleged that an attorney committed malpractice by settling a case instead of proceeding to trial. *Id.* The "case-within-a-case" standard was appropriate because the plaintiff

could only show that it suffered harm by demonstrating that it would have recovered more by going to trial instead of settling. *Id.*

## 2. "Some-evidence" Standard

Ohio recognizes that the "case-within-a-case" standard is inappropriate in some types of malpractice cases. *Vahila*, 674 N.E.2d at 1169–70. Instead, the "some-evidence" standard is used, which requires a plaintiff to provide "some evidence of the merits of the underlying claim." *Id.* at 1170. Put differently, it requires a plaintiff to show that the "claims or defenses that the attorney allegedly negligently failed to assert were 'at least colorable.'" *Goldberg v. Mittman*, 2007 Ohio 6599, *6 (Ohio Ct. App. 2007) (citation omitted).

The "some-evidence" standard applies "in cases in which a plaintiff's damage or loss has been suffered regardless of the fact that [the client] may be unable to prove that he would have been successful in the underlying matter(s) in question." *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, No. 1:11CV851, 2015 WL 1321744, at *15 (S.D. Ohio Mar. 24, 2015) (quoting *McCarty v. Pedraza*, 17 N.E.3d 71, 77 (Ohio Ct. App. 2014)). Examples where the "some-evidence" standard may be appropriate include circumstances where (1) an attorney's negligence causes the loss of a settlement opportunity,[9] (2) important evidence is lost over time due to an attorney's negligence in discovery,[10] and (3) an attorney's negligence causes a client to

---

[9] Under a "case-within-a-case" standard, courts would wrongly exclude evidence about settlement as too remote and speculative. The Ohio Supreme Court concluded that using a "strict" test in such circumstances would exclude "consideration of the most common form of client recovery." *Vahila*, 674 N.E.2d at 1169 (quoting Erik Jensen, Note, *The Standard of Proof of Causation in Legal Malpractice Cases*, 63 Cornell L. Rev. 666, 670–71 (1978)).

[10] In such cases, it would be very difficult to win under the "case-within-a-case" standard because the evidence no longer exists to show the merit of the underlying claim. *Vahila*, 674 N.E.2d at 1169. If a strict standard is applied, attorneys would be rewarded for their own negligence—the more negligent an attorney, the harder to find the attorney liable for malpractice. *Id.* In such cases, the "some-evidence" standard is appropriate.

suffer a higher damage award than is appropriate.[11]  In each of these examples, a plaintiff suffers harm from the attorney's negligence without regard to whether the underlying claim would have succeeded.

### 3.  Relevant Standard Here

Pierre did not say in its brief which standard it contends is applicable to its various assertions of professional neglect, but during oral arguments Pierre's counsel argued for the "some-evidence" standard.  Appellees argued that Pierre's underlying claims were not viable regardless of the standard employed.  On remand, the district court may need to determine how the two standards apply to Pierre's specific claims of professional negligence.[12]

### IV.  Underlying Claims

### A.  Claims Against Uballe

The district court viewed the LCA as a binding agreement between Pierre and CLS.  As a result, the court concluded that Uballe (CLS's "owner") was not a party to the contract, and any claims against him were not viable.  This conclusion was incorrect under the circumstances.

Under Ohio law, and in other jurisdictions as well, an agent acting on behalf of a defunct corporation is bound to the contract.  *Chatman v. Day*, 455 N.E.2d 672, 674 (Ohio Ct. App. 1982)

---

[11] In *R & J Solutions., Inc. v. Moses*, 171 N.E.3d 478 (Ohio Ct. App. 2021), for example, the plaintiff alleged that the damage award against it in the underlying case was higher than it otherwise would have been because the attorney failed to conduct discovery properly and failed to raise valid defenses.  The court held that the "some-evidence" standard applied because the plaintiff suffered harm without regard to whether he would have won the underlying suit. *Id.* at 487.

[12] We note that both standards may ultimately be relevant to Pierre's claims, depending on the nature of the allegedly negligent conduct and the harm suffered.  For example, Pierre argues that the Anspach Defendants' negligence caused Pierre to lose on its fraud claim where it otherwise would have been successful.  For that part of Pierre's claim, the "case-within-a-case" standard may apply best because the complaint alleges that the claim would have been successful but for the negligence.  But Pierre also alleged that the Anspach Defendants were negligent by withdrawing as counsel just weeks before trial, forcing Pierre to drop its demand for a jury trial and to spend additional money to hire last-minute counsel.  Pierre suffered these harms without regard to whether it would have ultimately won the underlying lawsuit.  Thus, the "some-evidence" standard may be more appropriate for that portion of the malpractice claim.  We leave these determinations to the district court on remand.

("[W]hen the articles of a corporation are canceled, whether by the Secretary of State or otherwise, the authority of the corporation to do business ceases and after such termination officers who carry on new business do so as individuals, lose the protection of the Corporation Act, and are personally responsible for such obligations as they incur."); *Orrand v. Kin Contr., LLC*, 2011 WL 1238301, at *5 (S.D. Ohio Mar. 30, 2011) ("The corporate entity does not shield individuals carrying on new business after the dissolution of the corporation; instead, those individuals are personally liable for the obligations and debts they incur."); *Bd. of Tr. of Ohio Lab. Fringe Ben. Programs v. Jenkins*, 2007 WL 1026740, at *3–4 (S.D. Ohio Mar. 30, 2007) (applying *Chatman*), *aff'd*, 283 F. App'x 315 (6th Cir. 2008); *Allied Pipe Prods., Inc. v. Petina*, 1988 WL 3741, at *3 (Ohio Ct. App. Jan. 14, 1988) ("To conclude otherwise is to encourage fraud." (quotation omitted)); *accord Sutton v. Houllou*, 141 N.Y.S.3d 501, 503 (N.Y. App. Div. 2021) ("As a general rule, a person entering into a contract on behalf of a nonexistent corporate entity may be held personally liable on the contract." (quoting *Comm'r of State Ins. Fund v. Staulcup*, 945 N.Y.S.2d 355, 357 (N.Y. App. Div. 2012))). This liability "is based on the rule that one who assumes to act as agent for a nonexistent principal is himself [or herself] liable on the contract in the absence of an agreement to the contrary and on the theory of a breach of an implied warranty of authority." *Houllou*, 141 N.Y.S.3d at 503 (alteration in original) (quoting *Metro Kitchenworks Sales, LLC v. Cont'l Cabinets, LLC*, 820 N.Y.S.2d 79, 80 (N.Y. App. Div. 2006)). Thus, had the Anspach Defendants timely discovered that CLS was a defunct corporation, Pierre could have sued Uballe for breach of contract.[13]

---

[13] The state trial court tried the breach-of-contract claim against CLS only—it did not try the claim against Uballe—and it did so based only on the evidence presented at the bench trial. *Pierre II*, 2021 WL 9978551. The Ohio Court of Appeals affirmed on the basis that there was adequate evidence "showing CLS lacked the capacity to be sued due to CLS's legal non-existence." *Pierre III*, 202 N.E.3d at 889; *see also Patterson v. V & M Auto Body*, 589 N.E.2d 1306, 1308 (1992). On remand, the district court can address the effect, if any, of the earlier trial.

Further, under Ohio law, "[a] contract, void on account of fraud, or for any other reason, is, in law, as though it had never been executed." *Perry v. M. O'Neil & Co.*, 85 N.E. 41, 46 (Ohio 1908). Thus, the contract would be voidable if Pierre's "assent [was] induced by either a fraudulent or material misrepresentation . . . upon which [Pierre was] justified in relying." Restatement (Second) of Contracts § 164 (1981). If Pierre's underlying fraud claim had merit and the agreement was voidable, the tort claims concerning Uballe in his personal capacity may not have been precluded by the LCA. *See, e.g.*, *Lewis v. Mathes*, 829 N.E.2d 318, 325–26 (Ohio Ct. App. 2005) (holding that, where a release agreement is voidable, a plaintiff can pursue claims of fraud after returning consideration received under the underlying agreement).

Under either theory, at least some claims against Uballe would have survived summary judgment in the prior state suit, either because Uballe could be deemed a party to the contract as an agent of a defunct entity or because the contract was voidable and thus did not preclude Pierre's tort claims. Thus, the district court erred in concluding that there were no viable claims against Uballe.

## B. The LCA's Integration Clause

Both the district court and the state court concluded that Pierre's tort claims were not viable because they were precluded by the Loan Commitment Agreement ("LCA"). The courts determined that (1) to the extent claims arose from communication prior to the LCA's signing, the claims were barred by the agreement's integration clause[14] and (2) tort-contract claim preclusion barred any tort claims arising after the LCA's was signed. As a result, the district court determined that none of the tort claims were viable.

---

[14] The LCA's integration clause stated: "This Agreement supersedes all prior correspondence, other agreements, and oral and other communications relating to financing arrangements between Borrower and Lender." R. 11-1, PID 384.

However, an integration clause does not automatically bar claims related to fraud. *See Galmish v. Cicchini*, 734 N.E.2d 782, 789 (Ohio 2000). In *Galmish*, the Ohio Supreme Court quoted a treatise, describing the principle well:

> [I]t was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement which was obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his deception or chicanery.

*Id.* (quoting 37 American Jurisprudence 2d 621–22 (1968)). Accordingly, "[f]raud cannot be merged," and the parol-evidence rule "is not applicable to preclude the admission of parol or extrinsic evidence to prove that a written contract was induced by fraud." *Id.* (citation omitted). The "presence of an integration provision does not vitiate the principle that parol evidence is admissible to prove fraud."[15] *Id.* at 790.

Appellees cite to a pair of cases from the Ohio Court of Appeals to argue that CLS's fraud claim must be merged into the breach-of-contract claim. *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996); *Gervace v. Master Foods, Inc.*, No. 37643, 1978 WL 218137, at *5 (Ohio Ct. App. Oct. 12, 1978). In *Textron*, the court held that a "tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract." 684 N.E.2d at 1270. And in *Gervace*, the court held that an "unfulfilled promise to do something in the future, gives rise to an action for

---

[15] However, the parol-evidence rule still applies where an individual alleges a fraud claim based on the fact that an earlier agreement differs from the terms that are now contained in the contract. *Galmish*, 734 N.E.2d at 790. "[T]he proffered evidence of fraud must show more than a mere variation between the terms of the written and parol agreement." *Id.* In the case of promissory fraud, for example, parol evidence is only admissible if it is "either independent of or consistent with the written instrument." *Id.* at 791 (quoting *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1436 (1992)).

breach of contract, not a fraudulent misrepresentation." 1978 WL 218137, at *5. But this language is unhelpful to Appellees because Pierre's fraud claim does not arise from the same actions as the breach-of-contract claim. Pierre's breach-of-contract claim arises from the allegation that Uballe failed to carry out his obligations under the signed contract; the fraud claim arises from the allegation that Uballe *lied* about a material fact, including the very existence of CLS, upon which Pierre then justifiably relied to its detriment. The fraud claim is not based on Uballe's "unfulfilled promise," but based on allegedly fraudulent conduct *before* the agreement was ever signed. Even if the cases could be read in the way Appellees suggest, *Galmish* is the Ohio Supreme Court's statement on the issue and authoritatively rejected the interpretation merging fraudulent inducement and breach-of-contract claims. *See Galmish*, 734 N.E.2d at 789.

Appellees next argue that the underlying fraud claim was not viable because a state court previously found that "there could be no 'reliance' on any of [Uballe's] purported statements outside of the LCA as a matter of law." Appellees Br. 24 (quoting *Pierre I*, 2021 WL 9978553, at *13). But the state court reached this conclusion *before* Pierre discovered CLS's nonexistence and the Anspach Defendants' alleged negligence. Appellees cannot now use the claim's failure in state court, which was allegedly caused by negligent representation, as dispositive evidence of the claim's nonviability if litigated competently. In fact, Pierre's loss in state court serves as the primary basis for its malpractice claim, like it does for many malpractice plaintiffs. That is, Pierre alleges that its fraud claim failed *because* of the Anspach Defendants' negligence, and that it would not have been dismissed had the Anspach Defendants performed competently. Appellees' interpretation would swallow the field of malpractice: If plaintiffs suffer a loss due to an attorney's

negligence, they would no longer be able to recover because the underlying claim was already determined to be nonviable by a court. We decline to adopt Appellees' reading.[16]

Because the parol-evidence rule does not automatically invalidate claims of fraudulent inducement, the district court erred in concluding that the claims were nonviable on that ground.[17] Moreover, agreements obtained through fraudulent inducement are voidable. *See Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990). Consequently, if the LCA was voidable due to fraud, it would also not preclude Pierre's underlying tort claims. *See id.* The district court should have considered whether Pierre's claims of fraud were viable and, if so, moved on to consider the other tort claims raised.[18]

## V. Conclusion

We AFFIRM the dismissal of the malpractice claim as to Gazian and Gehard and REMAND Pierre's malpractice claim to the district court to consider the effect of CLS's defunct status on Pierre's underlying claims against Uballe.[19] None of these issues were considered by the

---

[16] The only claim that went to trial in state court was the breach-of-contract claim against CLS. *Pierre II*, 2021 WL 9978551. The district court, referencing the state-court proceedings, properly concluded that the claim would not have been viable because CLS was a defunct entity. However, the breach-of-contract claim against Uballe did not go to trial in state court. And as we discuss above, Uballe may have been liable on the contract as the agent of a defunct entity.

[17] Under the district court's reasoning, fraudsters would be individually immune from suit as long as they manage to sign an integrated contract under the name of a nonexistent corporate entity. That reading of the law was explicitly rejected by the Ohio Supreme Court in *Galmish*, and we do not believe it is an appropriate reading in this case. *See Galmish*, 734 N.E.2d at 796 (Cook, J., dissenting).

[18] We provide a few examples of evidence that is admissible in a fraud claim like the one here. An individual can introduce parole evidence demonstrating that a party "made a promise with intent not to perform." *Galmish*, 734 N.E.2d at 791. In such cases, the evidence is "not proffered for the purpose of proving a parol agreement," but is instead used "to show that [a party] intended from the outset to prevent the fulfillment" of a promise. *Id.* A claimant may also introduce evidence of justifiable reliance on a representation, which occurs when the "representation does not appear unreasonable on its face and if, under the circumstances, there is no apparent reason to doubt the veracity of the representation." *Togo Int'l., Inc. v. Mound Steel Corp*., 665 N.E.2d 1160, 1163 (Ohio Ct. App. 1995). Relevant here, the "failure of a purchaser to examine public records does not necessarily preclude an action for fraud against a seller." *Pacifica Loan Five, LLC v. Fifth Third Ban*k, 2011 WL 13228111, at *8 (S.D. Ohio Apr. 14, 2011).

[19] In particular, the district court should consider: (1) Whether Uballe was the agent of a defunct corporation and could be held personally liable in a breach-of-contract claim; (2) whether Pierre's underlying fraud claim was viable; (3) whether the LCA was voidable due to fraud; and (4) if so, the effect of the contract's invalidity on the viability of

district court because it concluded that there were no viable claims against CLS and Uballe in the underlying state-court action and that CLS was uncollectable. We must therefore REMAND for further proceedings.

---

Pierre's other underlying tort claims. Depending on the outcome, the district court may also need to determine how the two proximate-cause standards apply to Pierre's various claims.